## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK



JOSEPH CUNNINGHAM )
)
) **COMPLAINT**
) Jury trial demanded
)
PLAINTIFF, ) **CASE NUMBER**
)
V. ) **08 CIV. 4307**
)
METRO-NORTH COMMUTER )
RAILROAD ) **JUDGE KARAS**
)
)
)
DEFENDANT, )

May 7, 2008

## COMPLAINT

## GENERAL ALLEGATIONS

### PARTIES

1.      The Plaintiff, Joseph Cunningham ("Plaintiff"), is a resident of Brewster,

New York.

2.      The Defendant, Metro-North Commuter Railroad ("Metro North") is a

public benefit corporation created pursuant to New York State's Public Authorities Law

and is a wholly-owned subsidiary of the Metropolitan Transportation Authority having a

principle place of business in New York City, New York.

### JURISDICTION AND VENUE

3.      The court has subject matter jurisdiction in this case pursuant to the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C §12101 et seq., which

incorporates by reference the Civil Rights Act of 1964, codified at 42 U.S.C § 2000e-5 et

seq., and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; the Rehabilitation Act, 29 U.S.C § 791 et seq., and the New York Human Rights Law, N.Y. Exec. Law § 291 et seq.

4.     The Plaintiff timely filed administrative charges of discrimination in violation of the ADA and New York State law with the New York Department of Human Rights and the Equal Employment Opportunity Commission (EEOC), and has received a Notice of Right to Sue from the EEOC, dated February 12, 2007, a copy of which is attached hereto as Exhibit 1.  The Plaintiff has filed this suit within 90 days of his receipt of the Notice of Right to Sue.

5.     This court has jurisdiction to the claims pursuant to 28 U.S.C §§ 1331 and 1343, and the court has pendent and supplemental jurisdiction over the claims alleged herein arising under New York state law as codified in 28 U.S.C § 1367.

6.     Venue is proper in this District under 28 U.S.C § 1391(b) and 42 U.S.C § 2000e-5(f)(3).

**FACTS**

7.     During all times mentioned herein, the defendant Metro North was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business in Fairfield and New Haven Counties in Connecticut, as well as in New York City, New York,  and Westchester County, New York.

8.     Since April 21, 2003, the Plaintiff was employed by Metro-North in their Bridges & Building (B&B) department, and worked in Connecticut and New York State. But for the discriminatory acts and omissions described below, the Plaintiff would have continued to work in this judicial district.

9.      During the course of his employment the Plaintiff was qualified to work as a B&B mechanic-carpenter, B&B mason, and B&B mechanic-iron worker.

10.     At all pertinent times the Plaintiff has suffered from sarcoidosis, an inflammatory disease that affects one or more organs, but most commonly affects the lungs and lymph nodes, and symptoms include: shortness of breath; persistent coughs; swollen and painful joints; enlarged and tender lymph nodes on the neck, armpits and groin; nasal stuffiness and hoarse voice; pain in the hands, feet or other bony areas; kidney stone formation; abnormal heartbeats (arrhythmias), inflammation of the covering of the heart (pericarditis), or heart failure; nervous system effects including hearing loss, meningitis, seizures is psychiatric disorders; fever, weight-loss, fatigue, night sweats and a general feeling of ill health.

11.     The Plaintiff has also been diagnosed as having an immune system disorder characterized by a chronic and persistent low count of CD4 cells (white blood cells), which lead the attack against infections; as result of this immune system disorder the Plaintiff is extremely susceptible to opportunitistic infections that would not pose a risk to a health individual with a normal immune system.

12.     According to the Plaintiff's medical reports, the Plaintiff's CD4 cell counts were extremely low, persistently in the nature of 100, and according to the US Centers for Disease Control, a person with a CD4 count of less than 200 is the equivalent of having AIDS (the Plaintiff has had many negative HIV serologic determinations, and makes no claim to have HIV or AIDS).

13.     In July of 2005 the Plaintiff was diagnosed with cryptococcal meningitis, a rare and painful brain infection caused by a fungus called Cryptococcus neoformans,

which is found mainly in bird droppings. It is an often-fatal disease and carries a high rate of relapse and recurrence.

14.     As a result of the meningitis, the Plaintiff was hospitalized for several weeks, suffered extreme emotions distress, was out of work for several months, and was on medication for over a year.

15.     It is the opinion of the Plaintiff's doctors that he inhaled or ingested Cryptococcus spores from working with old rotten wood and bird droppings during his employment with Metro North.

16.     The Plaintiff's physician, Nr. Nilo Herrera, cleared the Plaintiff to return to work in January of 2006, on the conditions that he must avoid all work around bird droppings, old wood and crawl spaces which could harbor fungal spores, and avoid all exposure to solvents, inhalants, specifically creosote and hydrocarbons.

17.     The aforementioned  request for accommodations was conveyed to Metro North in a letter from Dr. Nilo Herrera, dated January 10, 2006, the receipt of which has been acknowledged.

18.     On or about January 19, 2006, during a telephone conference call between the Plaintiff, Dr. Brian Hamway (Metro North's staff physician), and John Wagner, Director of the Maintenance of Way Deportment, Metro North agreed to the accommodations described in Dr. Herrera's January 10, 2006 letter.   Mr. Wagner also stated on any given day, if the Plaintiff's a work-gang is designated to do some work that was against the doctor's orders the Plaintiff would be re-assigned to a different work-gang.

19.     As a result of Mr. Cunningham's sarcoidosis and immune system disorder,

the Plaintiff has a "disability" has defined in the ADA, 42 U.S.C § 12102, and his disability substantially limits one or more of her major life activities; and/ or he is regarded by Metro North as having such an impairment.

20.     At all times the Plaintiff possessed the requisite skills, experience, educational and other job-related requirements and, with or without the reasonable accommodations, was able to perform the essential functions of a B&B mechanic/carpenter, mason, mechanic/ironworker, and therefore is a "qualified individual with a disability" as defined in the ADA, 42 U.S.C. § 12111.

21.     After retuning to work in January of 2006, and for the next several months, the Plaintiff was able to perform all of the essential functions of his job and he was given the accommodations as required by Dr. Herrera's January 10, 2006 letter, until July of 2006, when the Plaintiff's supervisors began to order him to work in conditions contrary to his doctor's orders.

22.     The Plaintiff brought this situation to his supervisors' attention, who told him that he had been cleared to work with no restrictions by Metro North's staff physician.

23.     Dr. Herrera then wrote Metro North on July 26, 2006, repeating the doctor's request for the  reasonable accommodations needed to avoid placing the Plaintiff's compromised immune system in the presence of opportunistic fungal spores, and stating that he was withdrawing his clearance for the Plaintiff to return to work until such accommodations are provided.

24.     On August 2, 2006, the Plaintiff's supervisors ordered the Plaintiff to go into a long-closed subway tunnel; a small contained atmosphere which contained rotten

wood, dust, and rotting and decaying corpses of dead animals, the very working conditions his doctors told him to avoid.

25.     Fearing for his health, the Plaintiff refused and asked his supervisors to contact his doctor.

26.     The Plaintiff was immediately told to leave the job site, and that he was withdrawn from service without pay.

27.     The Plaintiff supervisors told him that John Wagner, the Director of the Department, never told them of the accommodations that were promised or that the Plaintiff would be re-assigned if the work-gang he was assigned to was exposed to conditions that were contrary to the doctor's orders.

28.     On August 11, 2006 the Plaintiff was charged with insubordination and was directed to attend a disciplinary hearing.

29.     After being removed from the job and denied the reasonable accommodations, the Plaintiff filed a complaint with the New York Department of Human Rights and the EEOC.

30.     The Plaintiff attended the disciplinary hearing on November 28, 2006, and on December 20, 2006, the Plaintiff was told that he was found guilty of insubordination, and was suspended without pay for 151 days.

31.     The Plaintiff appealed the hearing officer's decision on the merits and as a result of procedural violations of the collective bargaining agreement because the decision was not given in a timely manner.

32.     While the appeal was pending, Metro North ordered the Plaintiff to appear before its staff physician on January 15, 2007, for an examination to "update your

medical status" stating that the Plaintiff's attendance "is mandatory" and "[y]ou must bring with you any documents from your personal physician for review by the Metro-North OHS Department Staff."

33.    The Plaintiff had been examined by the Metro North staff physician approximately five times in the previous year, and was already deemed clear to perform all essential functions of his position on several occasions in the preceding year; there was no change in the Plaintiff's medical condition since the last examination in July of 2006.

34.    The Plaintiff objected to the examination as being unnecessary, invasive and a pretext for Metro North to inquire into the nature and severity of the Plaintiff's disability in order to protect Metro North's own interests.

35.    Metro North's demand that the Plaintiff submit to the medical examination has no relationship to any vital "business necessity" as the Plaintiff was already cleared to work and had, in fact, been performing his essential job functions since January of 2006, and the mandate that the Plaintiff "must bring with you any documents from your personal physician for review by the Metro-North OHS Department Staff" is far too broad and invasive to have any relationship with any job related issue or consistent with any business necessity.

36.    On February 16, 2007, Metro North sustained the Plaintiff's appeal solely on the procedural violation, and committed to paying the Plaintiff the back pay he was owed as a result of being withdraw from service since August 2, 2007.

37.    Despite repeated requests, and without any explanation, Metro North did not pay the Plaintiff the money owed from his back pay until June of 2007, depriving him

of his pay for more than 10 months, forcing him to find new employment to provide for his family, and needlessly causing extreme financial hardship to the Plaintiff and his family.

38.    Before agreeing to return to work the Plaintiff repeatedly wrote Metro North and asked for a commitment to provide the reasonable accommodations described by his doctors, but Metro North refused to provide to Plaintiff with the accommodations, forcing him to choose between his health and his job at Metro North.

39.    The Plaintiff chose his health.


**CAUSE OF ACTION**

**Count One: Violation of ADA.**

Paragraphs 1- 39 of the General Allegations are re-alleged here as paragraphs 1-39 of Count One.

40.    Metro-North's treatment of the Plaintiff is in violation of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability in that they:

    a.    Failed to take reasonable accommodations to protect the Plaintiff's safety, after first agreeing to the accommodations, which would enable the Plaintiff to safely perform the essential functions of his position.

    b.    Ordered him to work in an environment that would expose him to physical and emotional harm.

    c.    Deprived him of his ability to provide for his family when they removed him from service without pay, suspended him from service without pay, and then refused to provide him with the back-pay owed for almost a full

year.

    d.   violated the ADA, 42 U.S.C. § 12112(d)(4)(A), in that it ordered to the Plaintiff to undergo a mandatory medical examination, including requiring the Plaintiff to bring "any documents from his doctors," and making inquiries as to whether such employee is an individual with a disability or as to the nature or severity of the disability, without the examination or inquiry being shown to be job-related and consistent with a vital business necessity.

41.    As a direct and proximate result of Metro-North discrimination, the Plaintiff has been deprived of economic benefits, including, but not limited to, salary, seniority, and fringe benefits.

42.    As a result of Metro North's discrimination against the Plaintiff, the Plaintiff is suffering will continue to suffer past and future economic, physical, and emotional harm.

**Count Two: Retaliation under the ADA**

Paragraphs 1- 42 of Count One re-alleged here as paragraphs 1-42 of Count Two.

43.    The actions of Metro North were taken in retaliation for the Plaintiff's efforts to protect his rights in violation of the ADA, 42 U.S.C. § 12203.

44.    As a direct and proximate result of Metro-North discrimination, the Plaintiff has been deprived of economic benefits, including, but not limited to, salary, seniority, and fringe benefits.

45.    As a result of Metro North's discrimination against the Plaintiff, the Plaintiff is suffering will continue to suffer past and future economic, physical, and

emotional harm.

**Count Three: Violation of New York Human Rights Law**

Paragraphs 1- 45 of Count Two are re-alleged here as paragraphs 1-45 of Count Three.

46.     The Plaintiff has a "disability" under N.Y. Exec. Law § 292.

47.     The Plaintiff requested the aforementioned "reasonable accommodations" as set forth in Dr. Herrera's January 10, 2006 letter, as defined in N.Y. Exec. Law. § 292.

48.     Metro North failed to provide the "reasonable accommodations" needed as a result of the Plaintiff's known as requested, and unlawfully discriminated against the Plaintiff in violation N.Y. Law Exec. § 296.

49.     As a direct and proximate result of Metro-North discrimination, the Plaintiff has been deprived of economic benefits, including, but not limited to, salary, seniority, and fringe benefits.

50.     As a result of Metro North's discrimination against the plaintiff, the Plaintiff is suffering will continue to suffer past and future economic, physical, and emotional harm.

**Count Four: Negligent Infliction of Emotional Distress**

Paragraphs 1- 50 of Count Three are re-alleged here as paragraphs 1-50 of Count Four.

51.     The aforementioned acts of Metro North were unreasonable.

52.     Metro-North knew, or should have known, that is result of its conduct the Plaintiff would suffer emotional distress or that such distress is likely the result of their acts and omissions.

53.     As a direct and proximate result of Metro-North's acts and omissions the Plaintiff has suffered severe and continuing mental and emotional distress and anguish.

**Count Five: Promissory Estoppel**

Paragraphs 1- 53 of Count Four are re-alleged here as paragraphs 1-53 of Count Five.

54.     Metro North promised to provide the Plaintiff with the reasonable accommodations suggested by Dr. Herrera.

55.     The Plaintiff understood this promise and relied upon it to his detriment.

56.     As a direct and proximate result of Metro-North promise and the Plaintiff's reliance he has been deprived of economic benefits, including, but not limited to, salary, seniority, and fringe benefits.

57.     As a direct and proximate result of Metro-North promise and the Plaintiff's detrimental reliance he is suffering will continue to suffer past and future economic, physical, and emotional harm.

WHEREFORE, the Plaintiff demands:

i) compensatory damages, including loss of enjoyment of life, emotional pain and suffering, back-pay, front-pay, lost fringe benefits and value of all of employment benefits an amount to be determined by the trier-of-fact, with interest from the date when such sums were due;

ii) the recovery of attorney's fees and costs;

iii) punitive damages under the Americans with Disabilities Act as provided for in 42 U.S.C. § 1981(b); and

iv) such further relief the Court deems just and equitable.

The Plaintiff also demands a trial by jury on all triable issues

> The Plaintiff, Joseph Cunningham
> by his attorneys,
>
> *Joseph Sargent*
> Joseph P. Sargent
> 1129 Post Rd
> Fairfield CT 06824
> ~~Ct17779~~
> Attorney Bar Code # JS 1234
> (203) 325-2323
> FAX (203) 659-7360
> Josephpsargent@optonline.com

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Joseph Cunningham<br>64 Lakeview Drive<br>Brewster, NY 10509 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2006-04455 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other (briefly state)    **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Spencer H. Lewis, Jr.,
Director

FEB 1 2 2008
(Date Mailed)

Enclosures(s)

cc:  **MTA METRO-NORTH RAILROAD**
347 Madison Avenue, 19th Floor
New York, NY 10017
Attn: Human Resources Director

Joseph P. Sargent, Esq.
80 Rippowam Rd.
Stamford, CT 06902

Exhibit 1